Trondo L. HUMPHREY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 48S00–9606–CR–409.

Supreme Court of Indiana.

May 29, 1997.

III. Did the trial court err in not admitting a pretrial affidavit made by one of the State's witnesses?

IV. Did the trial court err when it allowed into evidence a picture of the victim with his young child taken prior to the victim's death?

We affirm the conviction.

### Factual and Procedural Background

On the night of April 28–29, 1995, Benjamin Laughlin and Stephen Sites were driving around a neighborhood in Anderson looking for crack cocaine. Sites' account of events is summarized first. Sites was driving his truck. The two had been circling the same neighborhood for thirty to forty-five minutes when they saw three people in an alley. Believing the three to be drug dealers, Laughlin told Sites to pull into the alley. One of the three approached the truck on the passenger side and Laughlin asked the dealer to get in the cab to discuss a cocaine sale. As Sites drove, Laughlin and the dealer quickly exchanged words, the dealer drew a gun, Laughlin grabbed it, and the gun discharged. Sites saw the barrel of the gun but did not see a "flash" because the dealer "had the gun pushed up against [Laughlin]." Record at 253. The single shot struck Laughlin in the abdomen and the dealer jumped out of the moving truck and ran away. Sites testified that the dealer was young, black, had short hair, and was about five feet ten inches tall.[3] However, Sites was unable to provide a more precise identification of the dealer and also could not identify his two comrades waiting nearby. Sites estimated that the dealer was in the truck for thirty to forty seconds. Sites drove Laughlin to a nearby hospital where he eventually died from the wound. A forensic technician examined Sites' truck for fingerprints and blood spatters but was unable to recover any physical

Steven C. Smith, Patrick R. Ragains, Jane G. Cotton, Smith, Ragains & Cotton, Anderson, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

A jury convicted defendant Trondo L. Humphrey of murder.[1] The trial court sentenced Humphrey to sixty years in prison.[2] In this direct appeal, Humphrey raises several issues for our review that we restate as follows:

I. Did the trial court err in not affirmatively admonishing the jury that a prior inconsistent statement implicating Humphrey in the crime, properly admitted for impeachment purposes, was not to be considered as substantive evidence?

II. Was there sufficient evidence to support the conviction?

---

**1.** IND CODE § 35–42–1–1 (1993).

**2.** At the time the murder in this case was committed, there were two sentencing statutes for murder in effect. *See Smith v. State,* 675 N.E.2d 693 (Ind.1996). Although the parties do not raise the issue, the trial court appears to have

used the proper version of the statute. Record at 531.

**3.** Defendant Humphrey is a black male and was fifteen years old at the time of the murder. His height and hair length as of the night in question are unclear from the record.

evidence or discernable fingerprints from the vehicle.

Donnie Smith testified that he was drinking and smoking marijuana with the defendant and Roosevelt Brooks on the night of the murder in Brooks' garage near the alley where the shooting occurred. The garage door was open so the three had access to the alley to sell drugs on the street. At some point a truck stopped outside the garage and the defendant went outside to greet it, indicating to Smith that he believed the occupants were looking for cocaine. Smith heard the door of the truck open and close in the alley but testified that he did not hear any shots or actually see the defendant approach or enter the truck. The truck then "peel[ed] out" and the defendant returned to the garage, telling Smith that the "dude" tried to "gank him" or "get him." Record at 278. Smith saw only the back of the truck and could not testify to its color or whether it was the vehicle driven by Sites that evening. At some point prior to this incident, but not in the garage that night, Smith had seen the defendant carrying a gun.[4]

On June 16, 1995, Brooks, while in jail on an unrelated charge, gave an unsworn written statement to a police detective about the events of that night. According to the statement, Brooks was in his garage with someone he identified as the defendant from a photographic lineup containing pictures of six black males. The defendant went out to a blue truck with "white guys" inside, Brooks heard a "noise," and the defendant returned soon thereafter, stating that he had shot one of the men. Record at 310. At trial, Brooks testified that he knew the defendant but was not with him or Smith on the night of the shooting. Brooks repudiated the statement, which had been admitted · to impeach the credibility of his courtroom version, and testified in essence that it was fabricated due to police pressure.[5]

A jury convicted Humphrey and he appeals. This Court has jurisdiction under Indiana Appellate Rule 4(A)(7).

## I. Prior Inconsistent Statement

■ Humphrey argues that the trial court erred in allowing into evidence Brooks' unsworn jailhouse statement given to police before the trial. The statement was potentially very damaging to Humphrey because in it Brooks identified Humphrey as the admitted shooter of a white male in a blue truck outside Brooks' garage on the same night Laughlin was shot.[6] Humphrey correctly contends the statement was "classic hearsay" not ordinarily admissible as substantive evidence. The statement in question is clearly hearsay if offered to prove the facts contained because it was given out of court notwithstanding that Brooks was on the stand. This is precisely the point decided in *Modesitt v. State,* 578 N.E.2d 649 (Ind.1991), which overruled *Patterson v. State,* 263 Ind. 55, 324 N.E.2d 482 (1975). *Patterson* had held that out-of-court statements not given under oath could be considered as substantive evidence so long as the declarant was available for cross-examination at trial concerning the statement. In its place, *Modesitt* adopted Federal Rule of Evidence 801(d)(1) as the law of Indiana. The Indiana Rules of Evidence have since been adopted, and accomplish by Rule what *Modesitt* did by decision. Indiana Evidence Rule 801(d)(1)(A) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]" Because the prior statement was not under oath, it was not admissible under this Rule or any other. It was, however, admissible to im-

---

**4.** It is unclear from Smith's testimony how many times the defendant exited the garage to approach a truck in the ·alley or if any other trucks drove by the garage that evening.

**5.** Both counsel at trial referred to a "sworn" or videotaped statement apparently made by Brooks ·three days before the unsworn statement discussed above. However, there is no indication

that this other prior statement, assuming it in fact existed, was admitted into evidence or was otherwise considered by the jury. Nor is the record illuminating as to its contents.

**6.** The murder victim, Benjamin Laughlin, was Caucasian. Pictures in the record indicate that Sites was driving a blue truck on the night of the shooting.

peach Brooks. 13B R. MILLER, INDIANA PRACTICE: COURTROOM HANDBOOK ON INDIANA EVIDENCE 176 (1996–97 ed.).

■ Humphrey appears to concede that Brooks' statement was admissible to impeach Brooks' credibility, but argues that the jury was wrongly allowed to consider the statement as substantive evidence. Because the statement did not meet all the requirements of Rule 801, Humphrey contends the trial court erred in not admonishing the jury as to its limited admissibility. The State responds that Humphrey has waived any error because he did not make this request at trial.

■ Our evidence rules place the onus for securing a limiting admonition on the parties: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and admonish the jury accordingly." [7] Ind. Evidence Rule 105 (emphasis added). Humphrey's counsel challenged the foundation for admitting Brooks' statement, and clarified for the record that the trial court was admitting the statement to impeach, but at no point asked the jury to be admonished as to limited admissibility. Rule 105 does not preclude trial courts from giving a limiting admonition or instruction sua sponte as a matter of discretion,[8] but by its plain terms imposes no affirmative duty to do so.[9] 12 R. MILLER, INDIANA PRACTICE § 105.103 at 106–08 (2d. ed.1995) (collecting cases); DAVID P. LEONARD, THE NEW WIGMORE: A TREATISE ON

EVIDENCE § 1.11.1 at 1:78–79 (1996) (discussing other jurisdictions' versions of Rule 105).

There are important policy reasons for leaving the decision to request an admonition in the hands of the parties. Where potentially damaging evidence is properly admitted for one purpose, as here, trial strategy may dictate not requesting the admonition. At least in some cases, a limiting admonition or instruction may do more harm than good because it could focus the jury on an undesirable aspect of the evidence. The same rationale applies to the decision whether to cross-examine a witness, an area in which we have held that the trial judge "has no affirmative duty to ascertain whether a defendant is passing up cross-examination because of tactical considerations or through oversight or error." *Webb v. State,* 266 Ind. 554, 555, 364 N.E.2d 1016, 1018 (1977). Imposing a sua sponte duty on trial courts to admonish the jury whenever a limited admissibility situation arises under Rule 801(d)(1)(A) would effectively take strategic decisions better left to the parties out of their hands. *Cf. United States v. Cudlitz,* 72 F.3d 992, 1002 (1st Cir.1996) (emphasizing need for request under Federal Rule of Evidence 105 because sua sponte admonition, even if well intended, can disrupt counsel's strategy). It is well settled that appellate courts do not order new trials only because what can be presumed to be a strategic gamble did not pay off. Certainly in this case defense counsel would have had reason not to focus the jury on Brooks' unsworn statement suggesting his client as the perpetrator. An additional policy underlying the requirement of a request is

---

7. The Indiana version of Rule 105 is apparently the only in the nation to use the term "admonish" rather than "instruct." *Cf., e.g.,* FED R. EVID. 105. Judge Miller has opined that the distinction is intended to enable a party to request a limiting admonition at the time the evidence is offered, rather than waiting until the jury instructions. 12 R. MILLER, INDIANA PRACTICE § 105.104 at 109–10 (2d. ed.1995). Thus, a limiting admonition under Rule 105 (usually during trial) is to be distinguished from a limiting instruction (usually after evidence has been presented). *Id., see also* Ind.Crim. Rule 8; Ind. Trial Rule 51(C) (outlining requirements for preserving challenge to a jury instruction).

8. *See, e.g., Mitchell v. State,* 535 N.E.2d 498, 502 (Ind.1989) (limiting instruction); *Walters v. State,*

271 Ind. 598, 600–01, 394 N.E.2d 154, 156–57 (1979) (limiting admonition).

9. Indiana cases decided before Rule 105 came into force also emphasized the need for a request where the lack of a sua sponte limiting instruction or admonition was challenged on appeal. Indeed, several of these decisions specifically involved impeachment evidence. *See, e.g., Jackson v. State,* 273 Ind. 49, 54–55, 402 N.E.2d 947, 950–51 (1980); *Franklin v. State,* 270 Ind. 418, 420, 386 N.E.2d 668, 669 (1979); *Dixon v. State,* 621 N.E.2d 1152, 1156 (Ind.Ct.App.1993); *Roberts v. State,* 419 N.E.2d 803, 807–08 & n. 4 (Ind.Ct.App.1981) (also holding that failure to instruct sua sponte was not fundamental error), *appeal after remand,* 419 N.E.2d 803 (Ind.Ct.App. 1981).

the efficient administration of justice. As other jurisdictions have reasoned, in order to avoid unnecessary retrials "the defendant should make known to the trial judge his desire for such a cautionary instruction and afford him an opportunity to give it." *State v. Ray*, 259 La. 105, 249 So.2d 540, 543 (1971) (requiring specific request for limiting instruction where prior inconsistent statement was admitted for impeachment purposes). Accordingly, we hold that Rule 105 means what it says and that by failing to request an admonition Humphrey has waived any error based on the absence of an admonition.

■ The State raises a point not argued by Humphrey in this appeal as an additional reason why the admission of Brooks' statement was waived. In its final instructions to the jury, the trial court gave an "unlimiting" instruction, telling jurors they were free to consider a prior inconsistent statement both to impeach and as substantive evidence bearing on Humphrey's guilt or innocence. This instruction precisely mirrored the Indiana Pattern Jury Instruction on the use of prior inconsistent statements as substantive evidence. Record at 506. As of today's opinion, however, that pattern instruction had not been changed to reflect Rule 801 and the demise of the *Patterson* rule in *Modesitt.* 2 IND. PATTERN JURY INSTRUCTIONS (CRIMINAL) 12.19 (2d ed.1991). That instruction does not reflect current law and should not be used in trials in this state.

■ Although the trial court's instruction here did not specifically refer to Brooks' prior statement, under the facts of this case the instruction misstated the current law and instructed the jury that it could consider as substantive evidence an important piece of evidence that was admissible only for impeachment. Humphrey failed to object to this instruction. Therefore, even if Humphrey had challenged the "unlimiting" instruction in this appeal, the argument would have been waived for failure to register a timely objection at trial. Ind.Crim. Rule 8; Ind. Trial Rule 51(C) ("No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to

consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."). The trial court explicitly asked Humphrey's counsel if he had any objection to the proposed instructions and counsel answered in the negative. Record at 427. Had a proper objection been lodged to the instruction, the court would have been required to entertain it. There is no claim of ineffective assistance of trial or appellate counsel raised in this appeal.

## II. Sufficiency of the Evidence

■ Humphrey argues that the State failed to prove beyond a reasonable doubt that he murdered Benjamin Laughlin. In reviewing a sufficiency of the evidence claim, we do not reweigh evidence or assess the credibility of witnesses. A conviction will be affirmed if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Wooden v. State*, 657 N.E.2d 109, 111 (Ind.1995). Although Brooks' prior inconsistent statement could have been precluded from consideration as substantive evidence for the reasons explained, Humphrey's failure to object on hearsay grounds or request a limiting instruction allowed the jury to consider the statement in deciding Humphrey's culpability. Indeed, the instructions explicitly permitted jurors to consider it as substantive evidence under the now disapproved *Patterson* rule. For purposes of a sufficiency inquiry, "[o]therwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial." *Banks v. State*, 567 N.E.2d 1126, 1129 (Ind.1991) (citations omitted); *Keller v. State*, 560 N.E.2d 533, 534–35 (Ind. 1990); 13 R. MILLER, INDIANA PRACTICE § 802.101 at 578–79 (2d. ed. 1995) ("Although inadmissible in the face of a proper objection hearsay evidence is not inherently unreliable. Accordingly, the trier of fact may consider hearsay evidence that is relevant and admitted without objection[.]") (footnotes omitted).[10] The reason to require

10. Older Indiana cases involving the use of im- peachment evidence for substantive purposes

an objection to exclude an item in evaluating the sufficiency of evidence is that it is unknown and unknowable what else would have been offered if the improper evidence had been excluded. *Cf. Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (trial error in admitting evidence does not bar retrial under Double Jeopardy Clause because error deprived prosecution of opportunity to present additional evidence on fact at issue).

Humphrey contends that in the absence of Brooks' out-of-court statement naming him as the assailant, there is no evidence tying him to Laughlin's murder. Identity is indeed the crucial evidentiary issue here. The State's case was wholly circumstantial and would have been extremely thin if Brooks' statement had not been before the jury as substantive evidence. No physical evidence linked the defendant to the crime and the State's case hinged on the testimony of reluctant witnesses who contradicted their own pretrial statements about Humphrey's possible involvement. However, the evidence before the jury in this case supported a conviction for murder. Smith's testimony placed the defendant at the scene on the night of the killing and Brooks' jailhouse statement, taken together with the other evidence, would have allowed the jury to conclude that the defendant was the assailant. Therefore, Humphrey's claim of insufficient evidence fails.

### III. Admissibility of Pretrial Affidavit

After the State impeached Brooks with his unsworn statement in which Brooks named the defendant as Laughlin's possible assailant, defense counsel attempted to rehabilitate Brooks on cross-examination by producing an affidavit made by Brooks three months before the trial. In the affidavit, which was prepared by the defendant's attorneys, Brooks stated that (1) he never saw Humphrey shoot anyone on the night in question; (2) Humphrey never told Brooks that he shot anyone; and (3) Humphrey was not in Brooks' garage that evening. Record at 357–58. This affidavit was made several months after Brooks' jailhouse statement naming Humphrey as the possible assailant but before Humphrey was charged in the case. Defense counsel attempted to introduce the affidavit as a "prior inconsistent statement," arguing that the affidavit contradicted Brooks' unsworn statement placing the defendant at the scene of Laughlin's shooting. The court interpreted this offer as an attempt to impeach Brooks and refused to admit the affidavit, concluding that it was largely consistent with Brooks' trial testimony and therefore did not impeach him. Record at 354–56. Counsel nonetheless asked for permission to question Brooks about the substance of the affidavit and was allowed to do so.

Humphrey argues for the first time on appeal that the affidavit was admissible as a prior *consistent* statement apparently tending to rebut a charge of recent fabrication. *See* Evid.R. 801(d)(1)(B). This argument is waived because it was not raised at trial. *Marshall v. State*, 621 N.E.2d 308, 314 (Ind.

suggest the same result. In *Glover v. State*, 253 Ind. 536, 255 N.E.2d 657 (1970), an opinion of two justices stated that, in reviewing a claim of insufficient evidence, impeachment evidence should not be considered as substantive proof of the crime charged. Two justices dissented on this point and contended that the jury was entitled to weigh an out-of-court statement, admitted to impeach, that identified the defendant as the perpetrator. The fifth justice concurred in result with the first two. It is not clear whether there was an objection in *Glover* to the impeachment evidence. In any event, the authority cited by the *Glover* plurality, *McAdams v. State*, 226 Ind. 403, 81 N.E.2d 671 (1948), held that sufficiency is assessed excluding the impeachment evidence where that evidence is "admitted over objection." *Id.* at 411, 81 N.E.2d at 674. The trial court in *McAdams* also specifically instructed the jury (whether sua sponte or upon request is un-clear) not to consider the impeachment evidence for any other purpose. *Id.* And in *Webster v. State*, 274 Ind. 668, 672–73, 413 N.E.2d 898, 900–01 (1980), *appeal after remand*, 442 N.E.2d 1034 (Ind.1982), impeachment evidence was excluded from the sufficiency inquiry because, as in *McAdams*, the jury had been specifically instructed not to consider it for substantive purposes. *Webster* also remarked in dicta: "If the jurors has been permitted the use of that prior testimony as substantive evidence, the avenue would be open to this Court to consider it as evidence supporting the verdict in resolving the sufficiency issue on appeal." 274 Ind. at 672, 413 N.E.2d at 901. In contrast with *McAdams* and *Webster*, in *Banks* and *Keller* there was no objection or request for a limiting instruction and the improperly admitted evidence was considered in evaluating a claim of insufficient evidence.

1993). Even assuming the issue were available now and the trial court erred in not admitting the affidavit, Humphrey has not explained how he has been prejudiced. As substantive evidence, the affidavit was merely cumulative of Brooks' trial testimony. To the extent the affidavit tended to rehabilitate Brooks, defense counsel was permitted through cross-examination to show the jury that the affidavit existed and was consistent with Brooks' testimony. Humphrey's claim of error on this point is meritless.[11]

### IV. Admissibility of Photograph of the Victim

Finally, the trial court admitted into evidence, over Humphrey's objection, a photograph of Laughlin and his young son taken the year before Laughlin's death. Humphrey argues that the picture was irrelevant to proving his guilt or innocence and tended to inflame the passions of the jury. The State responds that the photograph was relevant to depict Laughlin. We review the admissibility of photographic evidence for an abuse of discretion. *Isaacs v. State,* 659 N.E.2d 1036, 1043 (Ind.1995), *reh'g denied,* *cert. denied,* 519 U.S. ——, 117 S.Ct. 205, 136 L.Ed.2d 140 (1996).

Humphrey does not direct us to any Indiana appellate decisions reversing a conviction due to the erroneous admission of a photograph of a murder victim taken during life. Indeed, we have upheld the admission of such photographs in a number of cases.[12] This is the first time we have faced the question since the Indiana Rules of Evidence expressly imposed the balance of relevance and prejudicial impact codified in Rules 401 and 403. The relevance standard prescribed by Rule 401 is a liberal one: "Relevant evidence means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401 (internal quotation marks omitted and emphasis added). Because murder involves the taking of a human life, the trier of fact must be given some proof that the alleged victim is actually dead and was alive before the date and time of the alleged killing. In this respect, the picture of a victim taken during life is marginally relevant. *See Butler v. State,* 647 N.E.2d 631, 633–34 (Ind.1995) (autopsy photographs of victims were relevant under Rule 401, even where defendant offered to stipulate to circumstances surrounding murder, because photographs helped establish victims' identity and fact of death).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Evid.R. 403. The problem with the photograph here is that Laughlin is pictured with his young child, who has no relevance to any fact of consequence in this case. *Cf. Dunaway v. State,* 440 N.E.2d 682, 686 (Ind.1982) (pre-death picture of victim with her child, offered during testimony by victim's mother, was admissible where the mother testified she was babysitting the child on the night of the murder). This smacks of victim impact evidence and is to be discouraged due to its possible emotional impact on the jury. *Kelley v. State,* 470 N.E.2d 1322, 1325 (Ind.1984) (testimony about victim's children generally irrelevant, prejudicial and not a proper part of the State's case). We can conceive of no other reason why a photograph of Laughlin and his son would be offered into evidence in this case. In the absence of some showing of greater probative value, the better part of the trial court's discretion would have been to exclude it. However, we see no abuse of

---

11. Humphrey also asserts without further explanation that his right to due process of law under the federal and state constitutions was violated by exclusion of the affidavit. This argument is waived for failure to cite authority or offer a cogent argument. App.R. 8.3(A)(7); *St. John v. State,* 523 N.E.2d 1353, 1355 (Ind.1988).

12. *See Evans v. State,* 563 N.E.2d 1251, 1263–64 (Ind.1990), *reh'g granted in part,* 598 N.E.2d 516 (Ind.1992); *Minnick v. State,* 544 N.E.2d 471, 478 (Ind.1989) (pictures used for identification of victim by witnesses who had observed the victim's movements on day of murder); *Raub v.*

*State,* 517 N.E.2d 80, 83 (Ind.1987); *Heald v. State,* 492 N.E.2d 671, 682–83 (Ind.1986), *overruled on other grounds by Spradlin v. State,* 569 N.E.2d 948 (Ind.1991); *Shelton v. State,* 490 N.E.2d 738, 742–43 (Ind.1986) ("perpetrators of such acts are not entitled to have their deeds completely sanitized when evidence is submitted to a jury"); *Averhart v. State,* 470 N.E.2d 666, 685 (Ind.1984) (picture of victim with granddaughter was relevant to show his appearance on day of murder; claim that photograph was unduly prejudicial found to be waived).

discretion or likelihood of prejudice here sufficient to order a new trial. The mother of the child is conspicuously absent. Given the activities of the victim on the night in question, the jury's reaction to this photograph is speculative at best.[13]

### Disposition

The conviction of Trondo L. Humphrey for murder is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

**13.** Humphrey also contends that admission of the photograph violated his right to due process of law under the state and federal constitutions. For this proposition, Humphrey cites only *Parker v. State*, 501 N.E.2d 1131 (Ind.Ct.App.1986), *reh'g denied, trans. denied,* a case involving neither due process of law nor the propriety of admitting a photograph of the deceased victim. Therefore, Humphrey's claim on this point is waived for lack of cogent argument. *See* note 11 *supra.*