Casey SAMS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9609–CR–577.

Court of Appeals of Indiana.

Dec. 19, 1997.

Belle T. Choate, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Following a jury trial, Casey Sams was convicted of Operating a Motor Vehicle After His Driving Privileges Were Forfeited For Life,[1] a class C felony, Operating a Vehicle While Intoxicated (OWI),[2] a class D felony because he had a previous OWI conviction within the five years immediately preceding the offense, and Public Intoxication,[3] a class B misdemeanor. The trial court bifurcated Sams's trial, and the jury was not asked to determine whether Sams was guilty of OWI as a class D felony until after it had initially determined that Sams was guilty of OWI as a class A misdemeanor. Sams raises the following restated issues on appeal:

1. Ind.Code Ann. § 9–30–10–17 (West Supp. 1997).

2. IC § 9–30–5–2 (West 1992); IC § 9–30–5–3 (West 1992).

3. Ind.Code Ann. § 7.1–5–1–3 (West 1982).

1. Was sufficient evidence presented to establish Sams's identity beyond a reasonable doubt?

2. Did the trial court abuse its discretion in admitting into evidence Sams's motor vehicle driving record in its entirety?

We affirm.

The facts most favorable to the judgment are as follows. Jaren Trammell testified that while she and her six-year-old daughter Kelly were walking down Prospect to a gas station at about 6:00 p.m. on December 2, 1995, Sams drove his car over the curb and approximately three feet onto the sidewalk, nearly striking Kelly. Trammell comforted Kelly and then castigated Sams, who, by that time, had backed up his car and parked it in the street close to Trammell. According to Trammell, Sams appeared to be drunk, smelled of beer, had numerous beer cans in his car, and told Trammell, "Oh, I didn't hit her, she's fine. I ain't gonna hurt no kid." *Record* at 166. Sams also made a comment to Trammell to the effect that his car had "died". *Record* at 175. Sams then went up to an apartment building and knocked on one of the doors. Trammell and Kelly continued on to the gas station. When the two were returning home from the gas station about fifteen minutes later, Trammell saw Sams come out of a bar, get back into his car, and unsuccessfully attempt to start it. According to Trammell, she then telephoned the police, but they declined to respond because, by that time, Sams was no longer in his car. Trammell went home and told her husband about the incident. Trammell's husband went outside to confront Sams, and Trammell also went out and again encountered Sams. According to Trammell, Sams had on the same clothing each time she encountered him that day.

At some point, Trammell again called the police. When police officers arrived, Sams identified himself as "Junior A. Sams", *Record* at 185, and gave officers several different dates of birth and different Social Security numbers. He was unable to produce any identification. Sams claimed that his brother had been driving the car. He also denied both that he had been driving and that the car belonged to him, but the police found paperwork and two bottles of prescription medicine bearing Sams's name in the car and keys to the car in Sams's pocket. At that point, Sams fled from the scene, but he was apprehended a short time later. The car was towed from the scene.

At trial, Trammell and the police officers called to the scene unequivocally identified Sams as the man they had encountered on December 2, 1995.

In his defense, Sams presented the testimony of his mother, who claimed that she gave Sams a ride to the corner of Prospect and State at approximately 6:00 p.m. on December 2, 1995. Sams also presented the testimony of his friend, Robert Wade. Wade claimed that Sams's brother Carl looked "almost identical" to Sams, *Record* at 263, that the car matching the description of the one involved in this case belonged to Carl, and that he (Wade) and Carl had been drinking at a friend's house on December 2, 1995 when they decided to go to a local bar. Wade also claimed that, after Carl drove his car to the bar that evening, the car's engine quit, and Carl went into the bar to call Sams for assistance in getting the car started. Wade further claimed that he never saw Sams that evening, but that the car was gone when they left the bar.

Sams also testified in his own defense at trial and denied that he had driven a car on December 2, 1995. He claimed that his brother Carl had called and asked him for assistance in getting his car started. Sams claimed that his mother drove him to the bar where the car was located, and that, while he was trying to get the car started, Trammell walked by, called him names, and claimed that he almost ran her over.

Before and during trial, Sams offered to stipulate to the fact that his license had been suspended for life. Sams's entire driving record consisted of many serious offenses, including, among others, reckless driving and

numerous offenses of operating a vehicle while his driving privileges were suspended, OWI, and operating a vehicle as an habitual traffic offender. He argued that the entire driving record would be highly prejudicial and, given his offer to stipulate, would have little or no probative value and its admission into evidence would violate Rule 403 of the Indiana Rules of Evidence. The State refused to accept the stipulation offered by Sams, and the trial court allowed the State to establish its case by introducing evidence of Sams's entire driving record.

At no time did Sams request that the trial court instruct the jury that it was to consider Sams's entire driving record for the limited purposes of establishing that his license had been suspended for life and his knowledge of such suspension.

The jury found Sams guilty of the charged offenses.

### 1.

 There is no merit to Sams's claim that the eyewitness identification of him by Trammell was insufficient to establish beyond a reasonable doubt that he was the driver of the car. When reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses, and we will affirm if there is evidence of probative value from which a jury could find the defendant guilty beyond a reasonable doubt. *Jenkins v. State,* 677 N.E.2d 624 (Ind.Ct.App.1997). It is within the province of the jury to assess the truth and veracity of witnesses' testimony, and we will not impinge on the jury's resolution of credibility disputes unless the witness's testimony is so incredibly dubious or inherently improbable that it runs counter to human experience and no reasonable person could believe it. *Id.* Sams's claim that there was insufficient evidence of his identity as the driver of the car is nothing more than an invitation for this court to reweigh the evidence. This we will not do.

### 2.

 Sams contends that the trial court abused its discretion in admitting into evi-

dence his motor vehicle driving record in its entirety and that this error mandates a reversal of his convictions.

 A defendant's objection pursuant to Rule 403 of the Federal Rules of Evidence and his offer to concede a point generally cannot prevail over the government's choice to offer evidence showing guilt and all the circumstances surrounding the offense. *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). Likewise, a defendant's objection pursuant to Rule 403 of the Indiana Rules of Evidence, which is identical to its federal counterpart in all pertinent respects, and his offer to concede a point generally cannot prevail over the State's choice to offer evidence showing guilt and all the circumstances surrounding the offense. *See Yamobi v. State,* 672 N.E.2d 1344, 1347 (Ind.1996)

> ([o]ne objective in adopting our rules of evidence was the development of a uniform body of law governing trials in both state and federal courts. In the absence of unique Indiana policy, constitutional or statutory considerations, courts in this state should normally construe Indiana evidence rules consistently with the prevailing body of decisions from other jurisdictions interpreting the same rule).

As noted above, while it is generally true that the prosecution is entitled to prove its case by evidence of its own choice, and a criminal defendant may not stipulate his way out of the full evidentiary force of the case to be presented against him, the United States Supreme Court recently determined that this general rule has virtually no applicability where the point at issue is a defendant's legal status that is independent of criminal behavior later charged against him. *Old Chief,* —— U.S. ——, 117 S.Ct. 644, 136 L.Ed.2d 574.

In *Old Chief,* the defendant was charged with violating a federal statute which prohibited the possession of a firearm by anyone with a prior felony conviction. Like Sams in this case, Old Chief offered to stipulate to the prior-conviction element. Old Chief argued that his offer to stipulate rendered evidence

of the name and nature of his prior offense—assault causing serious bodily injury—inadmissible because the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. The trial court admitted the judgment record for the prior conviction into evidence, and Old Chief was convicted of the charged offense. The United States Supreme Court stated:

> Given [the] peculiarities of the element of felony-convict status and of admissions and the like when used to prove it, there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence. For purposes of the Rule 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other. In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available.

*Old Chief,* —— U.S. at ——, 117 S.Ct. at 655. While the Court limited its holding in *Old Chief* to cases involving proof of felon status, we believe that its reasoning is equally applicable in cases such as the one before us. Accordingly, in light of the Supreme Court's recent opinion in *Old Chief,* we are persuaded that the trial court abused its discretion in admitting into evidence Sams's entire motor vehicle driving record instead of allowing Sams to admit that his license was suspended for life. However, we are not persuaded that this error mandates reversal of Sams's convictions.

Because of the strong evidence of Sams's guilt in this case and because Sams did not request a limiting instruction informing the jury that his driving record was to be used for the limited purposes of establishing that his license was suspended for life and his knowledge of such suspension, we deem the erroneous admission into evidence of Sams's entire driving record to be harmless. *See Humphrey v. State,* 680 N.E.2d 836 (Ind. 1997) (the onus for securing a limiting instruction is on the parties, and a defendant's failure to request an admonition waives any error based upon the absence of such an admonition).

Judgment affirmed.

KIRSCH, J., concurs.

DARDEN, J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I agree with the majority's conclusion that the trial court abused its discretion in admitting Sams' entire motor vehicle driving record into evidence. It is from the majority's conclusion that the admission of this evidence was harmless that I respectfully dissent.

An error is not harmless if it prejudices the defendant's substantial rights. *Bonner v. State,* 650 N.E.2d 1139, 1141 (Ind.1995); *See also* Ind.Trial Rule 61. In determining whether the defendant's substantial rights were prejudiced, we must assess the probable impact of the improperly admitted evidence upon the jury. *Bonner,* 650 N.E.2d at 1141. The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Id.* A reversal may be required if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Id.*

In my opinion, despite other evidence of the defendant's guilt, the erroneously admitted record was likely to have had an impact upon the jury such that it prejudiced Sams'

substantial rights. Conflicting evidence was presented to the jury regarding whether Sams or his brother operated the vehicle during the period in question. The jury, faced with the responsibility of determining the facts and weighing the credibility of witnesses, was subjected to highly prejudicial evidence of Sams' driving record consisting of numerous serious offenses, including reckless driving and operating a vehicle while his driving privileges were suspended, operating while intoxicated, and operating as an habitual traffic offender. This evidence of extrinsic offenses and bad acts was substantial and undoubtedly focused the jury's attention on Sams' character and his propensity to commit driving offenses rather than the conduct for which he was charged. In view of the nature, scope, and number of offenses contained in the exhibit at issue, I cannot conclude that there was no substantial likelihood that this evidence contributed to the conviction, and thus I decline to find the error harmless.

Furthermore, I do not believe that *Humphrey v. State*, 680 N.E.2d 836 (Ind.1997) supports the majority's conclusion that the error in question was harmless. In *Humphrey*, the defendant argued that the trial court erred in failing to admonish the jury not to consider a witness' prior inconsistent statement as substantive evidence. *Id.* at 839. Our supreme court found that Ind.Evidence Rule 105 places the onus for securing a limiting admonition on the parties, and concluded that the defendant's failure to request an admonition waived any error based upon the absence of such an admonition. *Id. Humphrey* did not involve a determination of whether erroneously admitted evidence prejudiced the substantial rights of the defendant. Thus, *Humphrey* is not applicable to the case at bar.

I would reverse the judgment of the trial court and remand for a new trial.