# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jan 11 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHARLES LAWRENCE, SR.,     ) | |
|     ) | |
| Appellant-Defendant,     ) | |
|     ) | |
| vs.     ) | No. 02A03-1105-CR-194 |
|     ) | |
| STATE OF INDIANA,     ) | |
|     ) | |
| Appellee-Plaintiff.     ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1009-MR-9

**January 11, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Charles Lawrence, Sr., appeals his conviction for murder. The sole issue raised for our review is whether the State presented sufficient evidence to support the conviction. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

The evidence most favorable to the jury's verdict indicates that on April 23, 2010, Quinton Lewis struck Lawrence's sister, Tekeila, in the mouth with an open liquor bottle. Lewis was Tekeila's boyfriend, and the two had a history of physical violence during their eleven-year relationship. After being struck, Tekeila telephoned 911 and also telephoned her sister, Louise, to tell her what Lewis had done to her. Louise then telephoned their oldest sibling, Lawrence, and asked him to pick her up and take her to Tekeila's apartment. Lawrence and his fiancée, Sanya, left the restaurant where they had been and drove immediately to pick up Louise.

At approximately 10:15 p.m., Officer Benjamin Truesdale of the Fort Wayne Police Department responded to Tekeila's 911 call. Officer Truesdale took a report of the battery alleged by Tekeila and also photographed the injury to Tekeila's mouth. Tekeila informed Officer Truesdale that after he struck her, Lewis left her second-floor apartment, taking her cell phone, her keys, and her car. Tekeila's cousin, Margretta, was also present in the apartment and confirmed Tekeila's story. Tekeila informed Officer Truesdale that a key to her apartment was included in the keys taken by Lewis. When asked if she had anyone to stay with for the night, Tekeila told Officer Truesdale that her brother was going to come

2

over and stay with her. Officer Truesdale exited Tekeila's apartment and returned to his police vehicle to compose his incident report as well as a probable cause affidavit for Lewis. He decided to remain outside the apartment for a period of time to make sure that Lewis did not return.

Meanwhile, Lawrence, Sanya, and Louise arrived at Tekeila's apartment. Lawrence was mad and upset that Lewis had "jumped on" his sister. Tr. at 219. After approximately twenty minutes, Sanya, Louise, and Margretta left the apartment. They exited the apartment complex at approximately midnight, the same time that Officer Truesdale was also driving away. Lawrence remained in the apartment with Tekeila. Tekeila was worried that Lewis was going to return to her apartment. Lawrence assured Tekeila that she could go to sleep because he was there to protect her. Tekeila smoked marijuana, took two Vicodin pills, and went to bed. Sometime thereafter, Tekeila awoke to the sound of "pop-pop-pop-pop-pop." Tr. at 184, 319. When she eventually got out of bed, she noticed that her apartment door was ajar and that Lawrence was no longer there. Tekeila closed the door, chained it from the inside, and went back to sleep on the couch.

At approximately 1:40 a.m., one of Tekeila's neighbors called police after discovering Lewis's body lying in a hallway on the bottom floor of the apartment building. Officer Truesdale, Officer Troy Jester, and Sergeant Trent Farrell all responded to the scene. Tekeila's cell phone was found lying next to Lewis's body and a trail of blood led the officers up the stairs to the door of Tekeila's apartment. A key was in the outside deadbolt of the door, so officers opened the door, but it was chained from the inside. Tekeila arose from

3

sleeping on the couch, unchained the door, and allowed the officers inside. Tekeila was shocked, nervous, and crying after officers informed her that Lewis's body was lying at the bottom of the stairs. While in this state of shock, Tekeila told Sergeant Farrell that her brother Lawrence had been at the apartment earlier and had stayed with her so she could sleep safely. Officer Jester overheard this statement.

Officers observed an empty shell casing inside of Tekeila's apartment on top of a laptop computer to the right of the apartment door. Officers also observed a bullet hole in the wall just outside the apartment door. Later forensic investigation indicated that the location of the shell casing and the trajectory of the bullet hole was the result of a gunshot fired from just inside Tekeila's apartment door. A second empty shell casing was found in the downstairs hallway near Lewis's body. At some point in the early morning hours of April 24, 2010, Lawrence returned home to his fiancée Sanya. About two and one-half or three hours later, police came to the residence and arrested Lawrence in connection with Lewis's shooting.

An autopsy revealed that Lewis suffered two gunshot wounds. One bullet entered his lip, went through his carotid artery, and exited his neck. This wound would not have been immediately fatal and would have allowed Lewis to run away while bleeding. Another bullet entered the back of his head, passed through his brain, and lodged in his left cheek. This wound would have caused immediate unconsciousness and death. On May 4, 2010, a handgun was found in a wooded area approximately 225 to 300 yards from Tekeila's

4

apartment complex. Forensic tests matched the handgun to the shell casings found at the murder scene.

On September 9, 2010, the State charged Lawrence with Lewis's murder and class B felony unlawful possession of a firearm by a serious violent felon. The State further alleged that Lawrence was a habitual offender. A jury trial was held on March 1, 2011. After the guilt phase of the trial, the jury found Lawrence guilty of murder. Pursuant to the State's motion, the trial court dismissed the unlawful possession of a firearm charge. At the conclusion of the habitual offender phase of the trial, the jury found Lawrence to be a habitual offender. Following a sentencing hearing on April 11, 2011, the trial court sentenced Lawrence to a sixty-year term, enhanced by thirty years based upon the habitual offender finding, for a total sentence of ninety years' imprisonment. This appeal ensued.

**Discussion and Decision**

Lawrence challenges the sufficiency of the evidence to support his murder conviction. When a defendant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn therefrom that support the verdict. *Id*. We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). A conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling

the factfinder to find the defendant guilty beyond a reasonable doubt. *Long v. State*, 935 N.E.2d 194, 198 (Ind. Ct. App. 2010), *trans. denied*.

To convict Lawrence of murder as charged, the State was required to prove beyond a reasonable doubt that (1) Lawrence (2) knowingly or intentionally (3) killed (4) Quinton Lewis. *See* Ind. Code § 35-42-1-1. There was no question that Lewis was killed knowingly or intentionally. The only contested issue was that of the identity of the shooter.

The evidence and reasonable inferences to be drawn from the evidence indicate that Tekeila and Lawrence were the only people in the apartment when the shooting occurred, and thus they were the only individuals with opportunity to commit the murder. An empty shell casing from the murder weapon, as well as the trajectory of a bullet hole found outside the apartment, established that the first shot was fired from inside Tekeila's apartment or, at least, from just inside the doorway of her apartment. A reasonable inference is that Lewis was shot from someone inside the apartment while he was opening the apartment door with a key. The jury heard ample evidence excluding Tekeila as the shooter. In addition, the jury heard undisputed evidence from which they could reasonably infer that Lawrence had a motive to kill Lewis, who had violently struck his sister.

Lawrence does not challenge the presence of ample circumstantial evidence of his guilt. Instead, he argues that the evidence placing him at the scene of the murder consisted almost entirely of impeachment evidence rather than substantive evidence. Indeed, three of the witnesses called by the State, Tekeila, Louise, and Sanya, each testified at trial that Lawrence left Tekeila's apartment well before the murder occurred. However, Tekeila's and

6

Louise's testimony was impeached by their prior statements to police clearly stating that Lawrence stayed in the apartment. Because the only evidence that Lawrence was present in the apartment at the time of the murder came in through the State's impeachment of its own witnesses, Lawrence asserts that there was insufficient substantive evidence to sustain the jury's verdict. We disagree.

Pursuant to Indiana Evidence Rule 607, a party may impeach the credibility of its own witnesses. However, evidence admitted only for impeachment may not be used as substantive evidence. *Gaby v. State*, 949 N.E.2d 870, 880 (Ind. Ct. App. 2011). Here, the State offered Tekeila's prior statements to police as both impeachment and substantive evidence. First, we note that the deputy prosecutor and defense counsel specifically agreed that Tekeila's prior statements to Officer Jester and Officer Farrell were admissible as substantive evidence and not limited to mere impeachment purposes. Tr. at 501-03. Moreover, statements made by a witness are admissible as substantive evidence pursuant to Indiana Evidence Rule 803(2) when the statements (a) pertain to a startling event or condition; (b) are made while the declarant was under the stress or excitement caused by the event or condition; and (c) are related to the event or condition. *See Impson v. State*, 721 N.E.2d 1275, 1282 (Ind. Ct. App. 2000) (discussing substantive admissibility of excited utterances). Immediately when Officer Jester and Officer Farrell entered Tekeila's apartment and informed her of Lewis's murder, Tekeila appeared shocked and nervous. While crying and under the stress of learning of the murder, Tekeila stated that Lawrence had stayed with her in the apartment that night to protect her from Lewis. Those utterances not

7

only impeached her trial testimony but also were admissible as substantive evidence. *See id.* (excited utterances to police officers admissible as both substantive and impeachment evidence). Regarding Tekeila's additional statement to Officer Truesdale that her brother was coming to stay with her on the night in question, that statement was also admitted as substantive evidence without objection. Tr. at 276.

Interestingly, not only did defense counsel specifically agree to the admission of some of Tekeila's prior inconsistent statements as substantive evidence, and fail to object to the admission of other statements, but there is also nothing in the record to suggest that defense counsel requested an admonishment or jury instruction limiting the use of any of those statements to impeachment only.[1] Accordingly, any challenge to the use of those prior inconsistent statements as substantive evidence is waived. *See Humphrey v. State*, 680 N.E.2d 836, 839 (Ind. 1997) (failure to object or request proper admonishment as to limited admissibility of evidence results in waiver of error on appeal).[2]

Contrary to Lawrence's contention, the State presented sufficient substantive evidence to establish that he was in Tekeila's apartment around the time of the shooting and had the opportunity to commit murder. Lawrence's presence at the scene coupled with other

---

[1] We note that defense counsel did object to the admission of both Tekeila's and Louise's prior statements made to Detective Carey Young during interviews that occurred several days after the murder. Those prior statements were properly limited to impeachment purposes. Tr. at 473.

[2] As is the case here, in *Humphrey*, the State presented a wholly circumstantial murder case in which the State's case "hinged on the testimony of reluctant witnesses who contradicted their own pretrial statements about [the defendant's] possible involvement." *Id*. at 841. Nevertheless, our supreme court found that testimony placing the defendant at the scene on the night of the murder, taken together with other circumstantial evidence, was sufficient to withstand a sufficiency of the evidence challenge on appeal. *See id.*

circumstantial evidence was sufficient to support reasonable inferences enabling the jury to find Lawrence guilty beyond a reasonable doubt. To the extent that Lawrence invites us to reweigh the evidence and reassess witness credibility, those are tasks not within our prerogative on appeal. As recently noted by our supreme court, "[a]ll an appellate court may determine is whether the evidence introduced at trial was substantial and had probative value." *Gray*, 957 N.E.2d at 174 n.1. There was substantial evidence of probative value to support the jury's conclusion that Lawrence murdered Lewis.[3]

Affirmed.

MAY, J., and BROWN, J. concur.

---

[3] Lawrence does not challenge the sufficiency of the evidence to sustain the habitual offender finding.

9