Douglas Allen LOUTH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 76A05–9806–CR–321.

Court of Appeals of Indiana.

Feb. 17, 1999.

---

John C. Grimm, Grimm & Grimm, P.C., Auburn, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Douglas Allen Louth ("Louth") appeals from the trial court's revocation of his probation, claiming that the State failed to file its petition seeking revocation before the statutory deadline.

---

### Issue

Louth presents several issues for review, which we combine and restate as whether the State timely filed its petition to revoke his probation.

### Facts and Procedural History

On April 30, 1991, Louth was charged with dealing in cocaine as a Class A felony in Steuben County, Indiana; the State alleged that he had committed this crime on March 10, 1990. On May 20, 1992, the State filed a second count against Louth, charging him with possession of cocaine as a Class C felony. Louth pled guilty to the possession charge on this date; pursuant to a plea agreement, the charge of dealing in cocaine was dropped. On January 29, 1993, he was given an eight-year suspended sentence; placed in a community corrections program entailing nearly eight months of work release and two 14-day periods of incarceration in the Steuben County Jail; fined $5,000.00; and placed on probation for four years. Louth's probationary term began on October 25, 1993, following his release from the community corrections program.

On June 20, 1996, a warrant was issued for Louth's arrest in Ann Arbor, Michigan, arising from an incident that occurred on University of Michigan property on June 2, 1996; a formal complaint was filed on July 9, 1996. Louth entered a plea of nolo contendere to the charge of breaking and entering without owner's permission on August 28, 1996. The judgment of sentence, dated September 4, 1996, ordered Louth to serve one year of probation and pay a $100.00 fine plus costs.[1]

On July 9, 1996, Steuben County probation officer Pam Feller ("Feller") made the following notation in Louth's case action log:

> Received a call from Doug Louth. He advised that there is a felony warrant for him in Michigan for burglary. He is going to turn himself in tomorr[o]w. He will be faxing a copy of the statement that he is

---

1. The procedural history of this offense is brief but convoluted. The "general offense report" from the University of Michigan lists the nature of the offense as breaking and entering without intent, but does not cite a relevant code section for this offense. The complaint form, dated July 9, 1996, lists the offense as breaking and entering

a building with intent, a felony, in violation of Mich. Comp. Laws § 750.110. The judgment of sentence, dated September 4, 1996, lists the offense as breaking and entering without owner's permission, a misdemeanor, in violation of Mich. Comp. Laws § 750.115.

submitting to the Michigan police. The offense occurred in Washtenaw County[,] Michigan. I told him that you [Steuben County probation officer Chris Sallows ("Sallows")] will be filing a violation as soon as you get the information from Michigan. Told him that Chris will probably request an initial hearing, but told that would be Chris' decision. Told him to call Chris on Monday.[2]

On July 15, 1996, Steuben County probation department employee LP (name unknown) made the following entry in the log:

Richard Lowe of Washtena[w] Co., MI Prob[ation Department] txed [telephoned?]. He will accept supervision of [Louth] even [though] he has pending charges for burglary of university property. He is going to require that [Louth] have a substance abuse evaluation and do urine tests. He is concerned about his traveling all of the time.

On July 22, 1996, Sallows entered the following information in the case action log:

Spoke w/Richard Lowe of the [Washtenaw] Co. Probation Dept. and he advised that the [University of Michigan] police are not sure as to how they are going to pursue this matter. Asked him that he advise if/when charges are filed.

Sallows made the following notations on September 3, 1996:

Spoke w/all about this case at staffing and it was decided that we would have an inter office meeting w/Doug and make a choi[c]e as to what to do w/the case. [No one] really thought that he needs to go away for [a] long time and that will happen if this goes to circuit court. Sent letter to Doug dire[c]ting him to report on 9/18/96 at 11:30AM for app[.]

Sent letter to [Michigan probation officer] Richard Lowe and advised of Doug's situation here and to advise as to what happened up there[.]

On September 18, 1996, Sallows recorded the following entry:

Doug called at 11:15AM and said that he had a last minute meeting at work and he could not attend. He had 2 weeks prior notice sent to him and he waits to the last minute. CH [Steuben County probation officer Cathy Hays?] PF [Pam Feller?] and myself feel that this just needs to go to the court and he can plead his case to [Judge] Wheat. Txed Ann Arbor probation and asked that info be sent to us on the [conviction] so that I can file [motion seeking revocation of probation]; will ask for IH[?].

Sallows filed a motion seeking revocation of probation ("MSRP") on October 3, 1996, alleging that Louth had committed the criminal offense of illegal entry in Washtenaw County, Michigan. Louth filed a motion to dismiss the MSRP on May 20, 1997, arguing that IND. CODE § 35–38–2–3 as amended by 1990 Ind. Acts 67 § 12 applied retroactively and to crimes committed before June 30, 1991. The statute reads in relevant part:

(a) The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

(2) the petition to revoke probation is filed before the earlier of the following:

(A) One (1) year after the termination of probation.

(B) Forty-five (45) days after the state receives notice of the violation.

Because the State filed its MSRP more than 45 days after he informed his probation officer of the arrest warrant, Louth reasoned, the MSRP should be dismissed.[3]

The trial court denied Louth's motion on May 20, 1997. In its application of law to the facts, the court found Louth's arguments "unpersuasive" and instead referred to IND. CODE § 35–38–2–3 as amended by 1991 Ind. Acts 214 § 1, which reads in relevant part as follows:

---

2. Probation department log entries were originally typed in all capital letters; we have reproduced them as written for purposes of legibility.

3. Louth's motion to dismiss alleges that he notified the Steuben County Probation Department the day after his arrest "[o]n or about June, 1996," which contradicts the version of events recorded in his case action log as noted above.

(a) The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

(2) the petition to revoke probation is filed **during the probationary period or** before the earlier of the following:

(A) One (1) year after the termination of probation.

(B) Forty-five (45) days after the state receives notice of the violation.

(Emphasis in original denoting newly inserted language.) 1991 Ind. Acts 214 § 3 further provided that IND. CODE § 35–38–2–3 as amended applied only to crimes committed after June 30, 1991; the trial court determined that this "commentary" was "simply a recognition that allowing the State to bring a motion [ ] for hearing seeking the revocation of a defendant's probation" up to one year after "the termination of the base period of probation, was a radical departure from existing law" and was added to fend off constitutional challenges of *ex post facto* legislation;[4] consequently, the June 30, 1991, cutoff "certainly cannot be construed as legislative intent to abolish years of judicial precedent which allowed the State to file a motion seeking the revocation of probation for so long as it was filed during a defendant's probationary term."

On June 19, 1997, Louth filed with the trial court a petition for certification for interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6), which was granted. On July 21, 1997, this Court denied Louth's petition. Louth filed a motion for the trial court to reconsider its denial to dismiss the MSRP, which was denied on July 24, 1997.

On December 15, 1997, Louth filed a motion for summary judgment with the trial court pursuant to Ind. Trial Rule 56, alleging that no issues of material fact existed with respect to the State's timely filing of its MSRP. Specifically, Louth relied on *Preston v. State*, 588 N.E.2d 1273 (Ind.Ct.App.1992) (*"Preston I"*), *opinion vacated on rehearing by Preston v. State*, 591 N.E.2d 597 (Ind.Ct.App.1992) (*"Preston II"*) to assert that the 1990 Ind. Acts 67 § 12 amendment of IND. CODE § 35–38–2–3 "is remedial in nature and applies retroactively," thereby challenging the trial court's holding that the 1991 version of the statute should apply. The trial court denied Louth's motion on December 15, 1997.

A fact-finding hearing on the State's MSRP was held on April 20, 1998. At the conclusion of the hearing, the trial court found that the State had shown by a preponderance of the evidence that Louth had violated the terms of his probation by committing a subsequent criminal offense. The court revoked Louth's probation and ordered that he serve one year of his original eight-year sentence, with this order to be stayed pending appeal.

## Discussion and Decision

### I. *Retroactive application of IND. CODE § 35–38–2–3 (1990 Ind. Acts 67 § 12 )*

#### A. *Applicability of Preston I*

Not only is Louth's continued reliance on *Preston I* misplaced, but his analysis of this Court's holding in *Preston II* also misses the mark. We first note that our vacated opinion in *Preston I* has no precedential value whatsoever. *See Barr v. Sumner*, 183 Ind. 402, 425, 109 N.E. 193, 194 (1915) ("apparent authority of first opinion was rendered null and void by the granting of the petition for a rehearing"). Furthermore, we determined in *Preston I* that the 1990 amendment of IND. CODE § 35–38–2–3 was remedial in nature and should be applied retroactively because of the "state's strong interest in not allowing a probationer to violate probation and then avoid a suspended sentence simply by leaving the state." 588 N.E.2d at 1275. Curiously, Louth requests this Court to apply the statute so that he may avoid serving a suspended sentence because of a probation violation he committed in Michigan.

◼ Louth incorrectly asserts that this Court in *Preston II* "restated its prior conclusion" that the 1990 version of IND. CODE § 35–38–2–3 "has a remedial purpose and would apply to Preston but for the fact that

---

4. We note, however, that 1990 Ind. Acts 67 § 12 also contained a provision allowing the State to file a petition to revoke probation within one year after the termination date.

the trial court in that case could not anticipate legislative changes" and did not advise him during sentencing that his probation could be revoked after his probationary period expired. On the contrary, we noted that we had applied the 1990 version of the statute retroactively for two reasons: (1) because of its remedial purpose as stated in *Preston I;* and (2) because it gave Preston sufficient notice to comply with the financial requirements of his probation. *Preston II,* 591 N.E.2d at 597–598. We did not go so far as to reaffirm our prior holding that the statute should be applied retroactively. Indeed, to do so would have been imprudent given the facts in *Preston II,* since many (if not most) criminal defendants placed on probation before July 1, 1990, would not have been advised of the possibility that their probation could be revoked after the termination date.[5] Therefore, most attempts to apply the statute retroactively where a defendant's probation has been revoked after its termination would be frustrated by our holding in *Preston II.* Finally, we note that Louth's MSRP was filed *during* his probationary period, which would not justify the retroactive application of the statute under our reasoning in *Preston I.*

### B. Interpretation of IND. CODE § 35–38–2–3 (1990 Ind. Acts 67 § 12 )

 Despite its inapplicability to the present case, we must also disagree with Louth's assertion that the 1990 amendment of IND. CODE § 35–38–2–3 required the State to file an MSRP before the earlier of one year after the termination of probation or 45 days after the State received notice of the violation. As mentioned in note five of this opinion, IND. CODE § 35–38–2–1 was also amended in 1990 and was enacted as part of the same public law.[6] Under this statute, a court is required to advise a defendant that a petition to revoke probation *may* be filed before the earlier of one year after

the termination of probation or 45 days after the State receives notice of the violation. When this Court interprets statutes, "we reconcile them with each other whenever possible." *Hendrickson v. State,* 660 N.E.2d 1068, 1071 (Ind.Ct.App.1996), *trans. denied.* "Interpretation of a statute is a question of law reserved for the courts [citation omitted]. Our goal in construing criminal statutes is to determine and give effect to the legislative intent." *State v. Hart,* 669 N.E.2d 762, 763 (Ind.Ct.App.1996).

In *Alvers v. State,* 489 N.E.2d 83 (Ind.Ct. App.1986), *trans. denied,* this Court addressed the issue of legislative intent:

While we are well aware of the prohibition against judicial legislation, we are also aware that there is often a fine line between such prohibited activity and permissible interpretation which provides legal guidance as to legislative intent. In fact, determining legislative intent is foremost in construing any statute and, wherever possible, this court will give deference to that intent [citations omitted].[7] Indispensable to ascertaining the legislature's intent is a consideration of the goals sought to be achieved and the reasons and policy underlying a statute [ ]. Consequently, it is necessary to view a statute within the context of the entire act, rather than in isolation, when construing the statute [ ]. In addition, words are given their plain meaning and this court may also look beyond the statute's language to the titles and headings of the statute [ ]. Furthermore, we may look to subsequent enactments of legislation [ ].... Moreover, it cannot be presumed that a legislature expects their enactment to be applied in an illogical or absurd manner, inconsistent with its underlying policies and goals [ ].

Of course, a penal statute, such as the one involved here, must be strictly construed against the state [ ]. However, such stat-

---

5. *See* IND. CODE § 35–38–2–1 (as amended by 1990 Ind. Acts 67 § 10), which requires a court to advise a defendant being placed on probation that a petition to revoke probation *"may* be filed" before the earlier of one year "after the termination of probation" or 45 days "after the state receives notice of the violation [emphasis supplied]."

6. 1990 Ind. Acts 67

7. Citations omitted from this excerpt will hereafter be indicated by closed brackets ("[ ]") for purposes of legibility.

utes must not be construed so narrowly as to exclude cases fairly covered thereby [ ].

*Id.* at 88–89.

■ In examining the amendments to IND. CODE § 35–38–2–3 enacted immediately before and immediately after the 1990 version, it is abundantly clear that the legislature could not have intended the result that Louth advocates. *See Jacobs v. State,* 640 N.E.2d 61, 64 (Ind.Ct.App.1994), *trans. denied* ("[i]n making our determination we must give effect to the plain and ordinary meaning of the language used and may also consider the statute's legislative history, including legislation passed either before or after the statute's enactment"); *see also Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct. App.1995) ("legislature's amendment of a statute is indicative of the legislature's intent at the initial enactment of the statute"). As promulgated by 1983 Ind. Acts 311 § 3, the statute did not require the State to file a MSRP within a specified number of days after it received notice of the defendant's violation, as long as the petition was filed before the termination of the probation period.[8] *Preston II,* 591 N.E.2d at 598. The 1991 amendment of the statute permitted the State to file its MSRP at any time during the defendant's probationary period *or* within 45 days after it received notice of the violation. As this Court noted in *Sutton v. State,* 689 N.E.2d 452, 455 (Ind.Ct.App.1997),

> this [45–day] provision was not designed to limit the State's ability to file a petition to revoke during the probationary period. Rather, the statute merely requires the trial court to inform a probationer that the State may file a petition to revoke, even if

the probationary term is ended, if it does so within the time limits outlined above. As such, the forty-five day filing requirement applies only if a defendant's probation has ended and the State has notice that the defendant violated his probation.

When read in conjunction with the permissive notice requirements of IND. CODE § 35–38–2–1, it is evident that the legislature could not have intended the 1990 amendment of IND. CODE § 35–38–2–3 to require the State to file a MSRP within 45 days of receiving notice of a violation if it occurred during the probationary period. *See Sanders v. State,* 466 N.E.2d 424, 428 (Ind.1984) ("statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme"). It would be unreasonable to insist that the legislature intended such a drastic procedural change to apply only to defendants who committed crimes between July 1, 1990, and June 30, 1991.[9]

■ We must therefore confine our analysis to the version of IND. CODE § 35–38–2–3 as it existed on March 10, 1990, when Louth committed the crime of cocaine possession. *See Elkins v. State,* 659 N.E.2d 563, 565 (Ind.Ct.App.1995) (defendant must be sentenced "in accordance with the statute in force at the time the offense was committed unless an amendment to the statute is effective prior to sentencing and the amendment provides for an ameliorative penalty"). As noted above, 1983 Ind. Acts 311 § 3 did not impose a deadline for filing a MSRP, as long as the petition was filed before the probation-

---

8. 1983 Ind. Acts 311 § 3 reads in pertinent part:
 (f) If the court finds that the person has violated a condition [of probation] at any time before termination of the period, it may:
 (1) continue him on probation, with or without modifying or enlarging the conditions; or
 (2) order execution of the sentence that was suspended at the time of initial sentencing.

9. This Court acknowledges that the principle underlying the prohibition of ex post facto laws "may limit the retroactive application of judicial decisions interpreting statutes." *Bryant v. State,* 446 N.E.2d 364, 365 (Ind.Ct.App.1983). A judicial construction "so unexpected as to deny fair

warning of what *conduct* is criminal can deny a defendant due process if applied to him retroactively [emphasis in original]." *Id., citing Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). "The fundamental concept underlying the prohibition of retroactivity, whether by way of the due process clause or the prohibition against ex post facto laws, is that of fair notice to the defendant at the time he acts that his behavior is deemed criminal." *Bryant,* 446 N.E.2d at 365–366. Because our analysis of IND. CODE § 35–38–2–3 concerns State filing requirements instead of giving a defendant fair warning of criminal conduct, we need not consider this issue further.

ary period expired. Therefore, the trial court did not err in determining that Louth's probation officer had timely filed a MSRP.

## II. Definition of "notice" in the context of IND. CODE § 35–38–2–3 (1990 and later amendments)

■ Notwithstanding our holding that the 1990 amendment of IND. CODE § 35–38–2–3 should not be applied retroactively, we shall address the issue of notice to the State for purposes of clarification. Louth insists that he provided the State with sufficient notice of his violation by telephoning his probation officer about his outstanding felony warrant on July 9, 1996.[10] Citing *Johnson v. State*, 692 N.E.2d 485, 487 (Ind.Ct.App.1998), the State correctly observes that "an arrest alone does not warrant the revocation of probation." The State also disfavors the notion that the 45–day deadline may be triggered by "the first hint of criminality," such as Louth's phone call, and casts doubt upon its ability to gather sufficient proof of a violation to prevail at a revocation hearing in response to an essentially "protective" MSRP.

■ In addressing this knotty issue of first impression, the statute plainly offers no guidance as to the form the notice must take, the information it must contain, or the means by which it must be given to the State. It is well-settled that either a probation officer or a prosecuting attorney may file a petition to revoke probation. *See Noethtich v. State*, 676 N.E.2d 1078, 1080–1081 (Ind.Ct.App. 1997) (petition may be filed by either probation officer or prosecutor). We recognize, however, that officials may receive information from countless sources and of varying levels of specificity and veracity concerning a possible violation of a defendant's probation. Given that a violation must be proved by a preponderance of the evidence, the State should not be expected to commence revocation proceedings in response to the flimsiest hint of a violation, especially in cases of

alleged criminal activity. *See Brooks v. State*, 692 N.E.2d 951, 953 (Ind.Ct.App.1998), *trans. denied* (standard of proof). The facts of this case clearly show the wisdom behind this policy: Louth's violation occurred out of state, and the record suggests that his probation officer was uncertain how the University of Michigan police were "going to pursue the matter" until after Louth was convicted on August 28, 1996.

With respect to IND. CODE § 35–38–2–3 and the issue of notice, we observe that the caselaw has focused exclusively on the State's duty to notify a probationer of matters such as alleged violations, hearings, and the possibility of revocation after expiration of the term. *See, e.g., England v. State*, 670 N.E.2d 104 (Ind.Ct.App.1996), *trans. denied* (1997); *Bryce v. State*, 545 N.E.2d 1094 (Ind.Ct.App. 1989), *trans. denied* (1990); *Taylor v. State*, 675 N.E.2d 1128 (Ind.Ct.App.1997). Because these matters largely involve the application of blackletter law, they shed no light on what may constitute notice of a probation violation to the State. Lacking helpful precedent to guide our inquiry, we consider favorably the proposition that

> [a] person put on inquiry by facts is to be allowed a reasonable time in which to make such inquiry before being affected with notice [footnote omitted].[11] Neither law nor equity will impute to a person a knowledge of facts which he has not had a reasonable opportunity to ascertain [ ]. What constitutes a sufficient lapse of time for notice depends on the circumstances of the case [ ].

66 C.J.S. *Notice* § 13 (1998).

We further agree with the general rule that "the issue of compliance with notice requirements is generally not a question of fact for the jury, but is rather a procedural matter to be determined prior to trial by the court [ ]." 58 Am.Jur.2d *Notice* § 44 (1989). In the case of probation revocation, this determination can be made at a pre-trial conference before the fact-finding hearing if the

---

10. Louth's insistence that his phone call to his probation officer constituted notice of his violation is puzzling, given his persistent attempts to relitigate the question of his guilt or innocence during the revocation fact-finding hearing.

11. Subsequent omitted footnotes are indicated by closed brackets ("[ ]").

45–day filing requirement is at issue. From a practical standpoint, the statute's 45–day deadline would only be triggered in cases where the State received notice of the violation less than 45 days before the defendant's probationary term expired or after the term expired.

With these considerations in mind, we therefore leave the determination of when the State received notice of an alleged probation violation to the discretion of the trial court, to be reviewed only for an abuse of such discretion. The trial court is best situated to evaluate the facts of each case to ascertain when the State received notice of a violation. Our holding is intended to relieve both the State and probationers of the procedural uncertainties and pitfalls that may result from hastily filed and investigated petitions to revoke probation.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

STATON and RILEY, JJ., concur.