Linzy C. CLARK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A04–1104–CR–249.

Court of Appeals of Indiana.

Dec. 5, 2011.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Linzy C. Clark appeals the trial court's denial of his motion to dismiss the notice of probation violation because the State did not file it within forty-five days of receiving notice of the violation. This case presents a unique question because Clark's probation was transferred from Madison County to Tippecanoe County. Tippecanoe County—the receiving court with supervisory authority—had notice of Clark's violation, but Madison County—the sentencing court—did not. Because we find that notice to the receiving court is notice to the sentencing court and Madison County did not file the notice within forty-five days of receiving notice of the violation, we conclude that the trial court abused its discretion in denying Clark's motion to dismiss. We therefore reverse the trial court.

### Facts and Procedural History

On May 2, 2005, Clark pled guilty in Madison Circuit Court to Class C felony aiding, inducing, or causing forgery and Class D felony theft. For the Class C felony, the trial court sentenced Clark to six years, all suspended to formal probation. Appellant's App. p. 3. And for the Class D felony, the court sentenced Clark to eighteen months, all suspended to formal probation. *Id.* The court ordered the sentences to be served concurrently.

By September 2006, Clark's probation had been transferred from Madison County to Tippecanoe County. When Clark's probation was transferred to Tippecanoe County, the expiration date of his probation was listed as January 27, 2011. Tr. p. 11. However, because credit time was not

included, Clark's probation should have actually expired on November 29, 2010. *Id.* at 12.

In November 2006, Tippecanoe County sent Madison County its one and only progress report on Clark. Because it had not received any progress reports from Tippecanoe County in the following four years, Madison County finally requested an update on Clark in November 2010. *Id.* at 8. On January 26, 2011, Trena Murphy in the Madison County Probation Department received an email from Deanna Moell in the Tippecanoe County Probation Department stating that Clark's "case was closed [on September 27, 2007,] per Heather Bozell," who worked in Elwood City Court.[1] *Id.* at 9. Murphy informed Moell that Bozell did not work for the Madison County Probation Department and therefore had no authority to close out Clark's probation. *Id.* Moell then informed Murphy that Clark was currently on probation in Tippecanoe County for two other cases.

Armed with this information, on February 7, 2011, Murphy from the Madison County Probation Department filed a notice of probation violation in Madison Circuit Court. Appellant's App. p. 19. The notice of probation violation alleged that Clark violated his probation by committing numerous new offenses—on April 4, 2007 (referred to as 3a in the notice), September 19, 2007(3b), November 19, 2008(3c), December 23, 2008(3d), March 18, 2009(3e), December 22, 2009(3f), and April 12, 2010(3g)—in Tippecanoe County. *Id.* at 19–20. The notice of probation violation also alleged that Clark failed to pay court costs, restitution, probation fees, and a fine. *Id.* at 20.

The probation violation hearing was held on April 11, 2011. After Murphy testified

to the above information, Clark moved to dismiss the notice of probation violation on grounds that it was untimely pursuant to Indiana law. Tr. p. 14. Specifically, Indiana Code section 35–38–2–3 provides:

(a) The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

(2) the petition to revoke probation is filed during the probationary period *or before the earlier of the following:*

(A) One (1) year after the termination of probation.

(B) *Forty-five (45) days after the state receives notice of the violation.*

(Emphases added). At the hearing, the State conceded that "it understand[s] the, the screw up on the part of Tippecanoe County supervising one of our probationers, however, the mere fact that [Clark] thought that his probation had r[u]n when he knew he got a six (6) year suspended sentence doesn't then give him the right to go out and start committing crimes over and over again." Tr. p. 16. The State then pointed out that at least two of the offenses occurred when Clark was still officially on probation in Tippecanoe County. *Id.* The trial court framed the issue as whether:

Mr. Clark gets to benefit from an administrative error of a probation officer in Tippecanoe County ah, about his probation. When he was sentenced in this court, ah, then it was Judge Spencer, told him he had six (6) years to do on probation. And so, the question is, does a probation officer in Tippecanoe County ah, get to make an error and say, "Well, you're off in two (2) years," and then he

---

1. Apparently, Tippecanoe County "closed out" Clark's probation "under the mistaken belief that his time was running concurrent with some other case or something over there." Tr. p. 5.

allegedly commit[s] a series of criminal acts, which Madison County doesn't find out about until January of 2011 and um, does Mr. Clark get to benefit from that and ah, simply walk away?

*Id.* at 17. The court said "the answer to that is, no, he doesn't get to benefit from that." *Id.* Specifically, the trial court concluded that the Madison County Probation Department filed the notice of probation violation within forty-five days of learning that Clark had committed new offenses. That is, the Madison County Probation Department received the email from the Tippecanoe County Probation Department on January 26, 2011, and then filed the notice of probation violation on February 7, 2011. Accordingly, the court denied Clark's motion to dismiss and said that it was "going to allow the State to go forward with its evidence and ah, we'll see whether or not there has been a violation of the terms and conditions of probation." *Id.* at 18.

 At this point, defense counsel said that Clark was just going to admit to the probation violations. *Id.* at 19. Clark then admitted that he committed several of the offenses outlined in the notice of pro-

bation violation (according to the State, two of them had been dismissed, 3c and 3f), was currently serving two years of probation in Tippecanoe County as a result of some of these offenses,[2] and had failed to pay the court courts, restitution, probation fees, and a fine.[3] Murphy requested "full revocation to the Indiana Department of Correction[ ]" even though Tippecanoe County "apparently ah, misspoke when they told [Clark] that he was off of probation." *Id.* at 24. The trial court sentenced Clark to four years of his previously-suspended sentence with ninety-four days of credit for time served plus credit time.

Clark now appeals.

### Discussion and Decision

 Clark raises three issues on appeal, one of which we find dispositive: whether the trial court erred in denying his motion to dismiss the notice of probation violation because the State did not file it within forty-five days of receiving notice of the violation. The issue of compliance with notice requirements is a procedural matter to be determined before trial by the court. *Louth v. State*, 705 N.E.2d 1053, 1059 (Ind.Ct.App.1999), *reh'g denied*, *trans. denied*. Accordingly, the determi-

---

**2.** Clark testified that he received "a year in prison and two (2) years supervised probation" for a "combination of the habitual traffic violator offenses plus ah, the resisting law enforcement." Tr. p. 21–22. Clark said that he was incarcerated from April 10, 2010, to December 3, 2010. *Id.* at 22. Although the cause numbers were not specified, Clark clarified that he pled guilty to two HTV offenses and one resisting law enforcement offense. According to the notice of probation violation, Clark operated a vehicle after being adjudged a habitual traffic offender on December 23, 2008(3d) and March 18, 2009(3e) and resisted law enforcement on April 12, 2010(3g). There was a third HTV offense (December 22, 2009), but according to the State this charge (3f) was dismissed. *Id.* at 24.

**3.** As for the allegation that Clark failed to pay court costs, restitution, probation fees, and a

fine, the record reveals that Clark's admission was sparse. That is, Clark merely testified that he "failed to pay all [his] court costs, restitution, fees and fines that were previously ordered." Tr. p. 22. No information was elicited about his ability to pay these fees. As our Supreme Court recently said, "As provided by Indiana's statutory scheme, probation may be revoked for violation of a probation condition but, for violations of financial conditions, only if the probationer recklessly, knowingly, or intentionally fails to pay." *Runyon v. State*, 939 N.E.2d 613, 616 (Ind. 2010). Because there is no evidence that Clark recklessly, knowingly, or intentionally failed to pay these fees, we find that his probation revocation cannot properly be based on these violations of his financial conditions.

nation of when the State received notice of an alleged probation violation is left to the sound discretion of the trial court. *Id.* at 1060.

■ Indiana Code section 35–38–2–3 provides:

(a) The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

(2) the petition to revoke probation is filed during the probationary period *or before the earlier of the following:*

(A) One (1) year after the termination of probation.

(B) *Forty-five (45) days after the state receives notice of the violation.*

(Emphases added). The forty-five-day deadline is only triggered in cases where the State received notice of the violation less than forty-five days before the defendant's probationary term expired or after the term expired. *Louth,* 705 N.E.2d at 1060.

The State argues that as a result of "crossed communication," a person at Elwood City Court sent a letter to the Tippecanoe County Probation Department instructing them to close out Clark's probation case. Appellee's Br. p. 6. Accordingly, the State asks us to hold "that the Elwood City Court employee's letter carried no authority to modify [Clark's] sentence and that the probationary period remained unchanged." *Id.* Thus, according to the State, Clark's probation ended on November 29, 2010, and not September 27, 2007, when the Tippecanoe County Probation Department mistakenly closed his case. The State concedes that it filed the notice of probation violation

"after the expiration of [Clark's] probationary period" and therefore subsection (a)(2)(A) or (B) must be satisfied. Appellee's Br. p. 7. The State argues, however, that the Madison County Probation Department learned of Clark's probation violation on January 26, 2011, and then filed the notice of probation violation on February 7, 2011, which was well within forty-five days and therefore timely according to subsection (a)(2)(B).[4]

We agree with the State that the Tippecanoe County Probation Department erroneously closed out Clark's probation on September 27, 2007, and Clark's probation continued until November 29, 2010. This is because the Elwood City Court did not have the authority to terminate Clark's probation. Accordingly, we must decide whether notice of a probation violation to a receiving court is notice of that violation to a sentencing court. We hold that it is.

The Indiana Judicial Center has issued guidelines for the Intrastate Transfer of Adult Probation Supervision. *See* Indiana Judicial Center, http://www.in.gov/judiciary/probation/intrastate.html (last visited Nov. 1, 2011). The receiving court (in this case, Tippecanoe County) has the following responsibilities:

A. The receiving court must accept intrastate transfer of an offender from the sentencing court if the offender resides in the receiving county.

\* \* \* \* \* \*

D. *The receiving court shall notify the sentencing court's probation contact person of the following:*

1. The receiving court's acceptance or rejection of the intrastate transfer.

---

4. Notably, the State does *not* argue that Clark waived the motion to dismiss issue by admitting to some of the violations.

If rejected, the reasons for rejection shall be specifically stated.

2. Availability of the sentencing court's specified treatment or other appropriate services;

3. The receiving court's request for additional conditions of probation;

4. The offender's appearance or failure to appear for the first probation meeting;

5. *The offender's violation of any probation conditions, including technical violations;*

6. The filing of a probation violation petition and whether a factfinding hearing will be held;

7. The results of fact-finding or administrative hearings held on probation violations; and

8. *The offender's successful completion of the probation term.*

*Id.* (emphases added). In addition, the protocol for transferring probation supervision discusses the procedures for addressing probation violations in intrastate transfer cases:

B. If the offender is alleged to have committed a violation of probation while under supervision in the receiving county, and if such violation is not resolved by administrative sanction:

1. The receiving court's probation department shall file a notice of violation of probation under the case number assigned by the receiving court when transfer was accepted.

2. *The receiving court shall notify the sentencing court of the probation violation allegations.*

3. The receiving court may require the offender to appear at a probation violation fact-finding hearing by summons or warrant, and may detain the offender with or without bond.

4. The receiving court may conduct a fact-finding hearing to determine if probable cause exists to believe that the offender has violated any probation conditions.

5. If the receiving court finds that there is no violation of probation, probation shall continue and the receiving court shall notify the sentencing court concerning such finding.

6. If the receiving court determines that there is probable cause to believe that a violation of probation exists, and that the dispositional hearing should be held by the sentencing court, then the receiving court shall forward the fact-finding order to the sentencing court's probation contact person and shall set forth the alleged violations, the facts supporting the allegations, and whether the receiving court would accept the offender for continued probation in that county.

7. If the receiving court determines that there is a violation of probation, and that the sentencing court has permitted the dispositional hearing to be held by the receiving court, then the receiving court shall forward the fact-finding order to the sentencing court's probation contact person and such order shall set forth the alleged violations, the facts supporting the allegations, the sanctions that were imposed, and whether the offender will continue to be monitored by the receiving court.[5]

---

5. Rule 2.3(C) of the Indiana Rules of Criminal Procedure addresses the transfer of sanctioning authority to the receiving court:

The judge of a circuit, superior, city or town court, when transferring probation supervision to a court of another jurisdiction, may also transfer sanctioning authority for probation violations, including revocation of probation. If the original sentencing court transfers sanctioning authority, the

8. After a finding of probable cause on a probation violation by the receiving court, the offender shall be transferred to the sentencing court for the dispositional hearing, unless otherwise specified by the sentencing court in its transfer order.

9. The sentencing court shall be responsible for the manner and/or cost of transportation of the offender back to the sentencing court if the offender is in custody in the receiving county.

10. The receiving court shall be responsible for the cost of detaining the offender in the receiving county pending resolution of the violation of probation and the securing of the offender for transport by the sentencing court.

11. In addition to the receiving court's fact-finding hearing on the probation violation, the sentencing court may require the offender to appear in the sentencing court for a dispositional hearing. The sentencing court may require the offender to appear at the dispositional hearing by summons or warrant, and may detain offender with or without bond.

*Id.* (emphasis added).

■ Even though we do not know whether Madison County also transferred sanctioning authority to Tippecanoe County, at the very least Tippecanoe County had supervisory authority over Clark's probation, and because of the snafu, this supervisory authority extended until November 29, 2010, or Tippecanoe County sent the case back to Madison County. Supervisory authority includes the duty to notify the sentencing court of "[t]he offender's violation of any probation condi-

tions, including technical violations" as well as "[t]he offender's successful completion of the probation term." Thus, Tippecanoe County should have notified Madison County of Clark's alleged probation violations as a result of his commission of new offenses as well as when it (erroneously) terminated Clark's probation on September 27, 2007.

■ These issues aside, there is no question that Tippecanoe County, the county with supervisory authority over Clark's probation, knew about Clark's new offenses because they all occurred in Tippecanoe County and resulted in charges being filed against him in Tippecanoe County (even though charges in two of the seven cause numbers were eventually dismissed) and a sentence of one year in prison and two years of supervised probation in Tippecanoe County for three of the more recent cause numbers. It is true that Madison County, the sentencing court, did not have notice that Clark committed these offenses. But Tippecanoe County had notice. And notice to the receiving court—Tippecanoe County—is notice to the sentencing court—Madison County. In other words, because the receiving court had notice of Clark's violation, "the State" had notice within the meaning of Section 35–38–2–3(a). Imputing notice from the receiving court to the sentencing court is in line with the purpose of Section 35–38–2–3(a), which is to encourage the prompt presentation of claims. *Sharp v. State,* 807 N.E.2d 765, 767 (Ind. Ct.App.2004).

Having determined that the State had notice of the violation, we now address whether Madison County timely filed the

consent of the judge in the receiving court is required.

Here, there is no indication in the record whether Madison County also transferred

sanctioning authority to Tippecanoe County. We find this to be inconsequential because in either case the notice of probation violation was not timely filed.

notice of probation violation against Clark. Because Murphy, Clark's Madison County probation officer, filed the notice on February 7, 2011, it was clearly within one year of Clark's November 29, 2010, probation end date according to subsection (a)(2)(A). However, the notice must have been filed within forty-five days of the State receiving notice under subsection (a)(2)(B) if that occurred before the one-year limitation passed. *See id.* at 767. Murphy alleged in the notice that Clark committed numerous offenses ranging from April 4, 2007, to April 12, 2010. Because violation of a single condition of probation is sufficient to revoke probation, *see Richardson v. State,* 890 N.E.2d 766, 768 (Ind.Ct.App.2008), *reh'g denied,* we will give the State the benefit of the doubt and calculate the forty-five days based on Clark's most recent offense. That is, Clark resisted law enforcement (3g) on April 12, 2010, which resulted in the State filing a charge against him later that same month.[6] So, even assuming that the State

charged Clark with resisting law enforcement on the last day of the month, April 30, 2010, the February 7, 2011, notice of probation violation was not within forty-five days of that date. Because the State knew of the violation but did not file the notice of probation violation within forty-five days of receiving notice, we find that the notice of probation violation is untimely. Accordingly, we conclude that the trial court abused its discretion in denying Clark's motion to dismiss the notice. We therefore reverse the trial court.

Reversed.

FRIEDLANDER, J., and DARDEN, J., concur.

---

6. Although the notice of probation violation lists the date that the offense was committed and not the date that Tippecanoe County filed charges and therefore (at the very latest) had notice of the probation violation, we can discern from the cause number that the charge was also filed in April 2010, as the cause number is 79D05-*1004*-CM-337.