## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 06 2015, 9:54 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Max E. Long,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 6, 2015

Court of Appeals Cause No. 07A05-1405-CR-222

Appeal from the Brown Circuit Court, The Honorable Judith A Stewart, Judge
Cause Nos. 07C01-1302-FC-58 & 07C01-0612-FC-487

**Vaidik, Chief Judge.**

# Case Summary

[1]  In this combined appeal, Max E. Long appeals his convictions for Class A misdemeanor operating a vehicle while intoxicated endangering a person and

Class C felony operating a motor vehicle while privileges are forfeited for life as well as the revocation of his probation. He contends that the trial court erred in admitting his redacted Indiana Official Driver Record and that the evidence is insufficient to show he was intoxicated before he drove his truck as opposed to after. He also contends that the State's delay in filing the petition to revoke his probation prejudiced him, denying him due process.

[2] Because the irrelevant entries were marked out and the trial court admonished the jury to disregard them, we conclude that the trial court did not abuse its discretion in admitting Long's redacted driver record. Given the extent of Long's intoxication, the crash itself, Long's admission that he was drinking before the crash, and the fact that only three beer cans (one half-full) were found in the truck, we find that the evidence is sufficient to prove that Long was intoxicated when he drove the truck. Finally, because the State filed the petition to revoke Long's probation during the probationary period, we find no error on this issue. We therefore affirm.

## Facts and Procedural History

[3] In February 2013 Long was a habitual traffic violator whose driving privileges had been suspended for life. State's Ex. 26A. Shortly before 10:00 p.m. on February 21, 2013, Ann Anderson was driving on State Road 135 north of Nashville, Indiana. It was snowing and icy at the time. As she approached New Life Church, Ann saw taillights off the road and over a hill. She turned

her car around to investigate and parked her car in the church parking lot. Ann watched as a truck tried to back out, spinning its tires.

[4] Ann walked down the hill and saw that a wheel was off the truck. Ann asked the driver, who was wearing a hooded sweatshirt, if he was okay and needed any help. There was no passenger. Because the driver was "grumpy" and "really mad," Tr. p. 45, Ann returned to her car and called 911.

[5] Brown County Sheriff's Deputy Nathan Tompkins was dispatched to the scene at 10:00 p.m. As Deputy Tompkins drove north on State Road 135 from Nashville, he saw a truck off the left side of the road facing away from him in a small group of trees. Deputy Tompkins activated his emergency lights. While scanning the crash scene with his spotlight, Deputy Tompkins saw a man, later identified as Long, wearing a hooded sweatshirt and walking toward the church. Deputy Tompkins noticed that Long's pants were wet in the crotch and buttocks areas and that his "pants were wet running down his legs from his crotch area." *Id.* at 60. When Deputy Tompkins asked Long if he knew anything about the crash, Long responded, "[N]o, but that's fu\*\*ed up, ain't it." *Id.*

[6] Deputy Tompkins immediately observed signs of intoxication in Long. Long's eyes were bloodshot and watery, his speech was slurred, he had a strong odor of alcohol on his breath, and he was swaying. *Id.* at 62. Based on the wet areas of Long's pants, Deputy Tompkins determined that Long had urinated on himself. Long also had a bleeding cut above his right eye. At one point, Long told

Deputy Tompkins that he was walking home to Fruitdale and that he had been walking for awhile. *Id.* at 64. But at another point, Long said that he was waiting on a friend. *Id.* Long's clothing was inconsistent with his claim that he had been walking because it was snowy and wet outside, but Long's pants legs, boots, and top of his shoulders were dry. Also, Long was not walking toward Fruitdale. When Deputy Tompkins asked Long why he was not walking toward Fruitdale like he claimed, Long responded that he did not know. *Id.* at 65-66. Long admitted that he had been drinking alcohol earlier. *Id.* at 64.

[7]     In the meantime, two Nashville Police Department officers arrived on the scene. Officer Timothy True followed a set of footprints in the snow that led from Long back to the truck. The size, tread, and shape of the footprints were consistent "all the way from Long to the truck." *Id.* at 110. The officers decided to take Long to the Brown County Sheriff's Department to conduct field-sobriety tests in a controlled environment. Officer Josh Stargell drove Long while Officer True followed.

[8]     When they arrived at the Sheriff's Department, Officer True opened the rear door of Officer Stargell's car, and Long was asleep. Officer True had to shake Long in order to wake him up. Once inside, Officer True had Long perform field-sobriety tests. Long failed the Horizontal Gaze Nystagmus test and the walk-and-turn test; he refused to do the one-leg-stand test. Officer True then read Long Indiana's Implied Consent Law. Long initially agreed to take a chemical test. But when the time came to take the certified breath test, Long refused because he thought it involved "urinat[ing] in a cup." *Id.* at 130.

During this process, Long acknowledged that his driver's license was suspended. State's Ex. 25 (6:06-6:11). Officer True concluded that Long was intoxicated based on the following: (1) Long's unsteady balance; (2) his red, watery eyes; (3) his breath smelled liked alcohol; (4) his pants were wet in the crotch area; (5) his wrecked truck; and (6) his failed field-sobriety tests.

[9] While Long was at the Sheriff's Department, Deputy Tompkins stayed at the scene to prepare a crash report. Deputy Tompkins determined that the crash had occurred "fairly recent[ly]." Tr. p. 85. He created a diagram showing how he believed the crash occurred. *See* State's Ex. 16. That is, Long crossed the centerline, went off the road, drove into a mailbox, and ran over a big concrete structure, which sheared off his wheel. Tr. p. 71-74. There was no evidence that Long braked, swerved, or skidded due to road conditions. *Id.* at 75-76. Inside the truck, Deputy Tompkins found three cans of Bud Light beer; one of them was in the center console half-full, one was on the driver's side floorboard empty, and one was on the rear floorboard empty. Deputy Tompkins also found Long's birth certificate in a "cubby space" in the dash. *Id.* at 85.

[10] The State charged Long with Class A misdemeanor operating a vehicle while intoxicated endangering a person and Class C felony operating a motor vehicle while privileges are forfeited for life under Cause No. 07C01-1302-FC-58 (Cause No. 58). A bifurcated jury trial was held. During the first phase, the jury found Long guilty of operating a vehicle while intoxicated endangering a person. During the second phase, Long objected when the State introduced his six-page Indiana Official Driver Record. Long argued that because his driver

record contained numerous irrelevant entries, it was prejudicial to admit his entire driver record. Eventually, the trial court, Long, and the State worked together to mark out with a black marker the entries that were unrelated to Long's HTV status and suspension for life. When the State admitted Long's redacted driver record, State's Ex. 26A, it contained three unredacted entries. The trial court admonished the jury as follows:

> Ladies and gentleman, when you receive this exhibit you will notice that there have been redactions made to it where things have been crossed out. That has to do with evidentiary rulings that I made. You are to completely disregard that and just pay attention to the part that is not crossed out. Don't speculate as to what may have been crossed out or why.

Tr. p. 233-34.

[11] The jury found Long guilty of operating a motor vehicle while privileges are forfeited for life. The trial court sentenced Long to an aggregate sentence of six years in the Department of Correction.

[12] About a month before Long crashed his truck—on January 17, 2013—the State had filed a petition to revoke Long's probation in another cause number, Cause No. 07C01-0612-FC-487 (Cause No. 487), alleging that Long tested positive for marijuana on March 26, 2012.[1] Appellant's Prob. App. p. 35, 36. In that cause,

---

[1] The probation officer testified that they waited in filing the petition to revoke Long's probation based on the positive drug test in order to give Long an opportunity to get substance-abuse treatment, but Long never followed through. That is, they told Long about the positive drug test on May 10, 2012, and directed him to complete treatment. Prob. Tr. p. 10. However, Long never provided proof that he received treatment. *Id.* at 10-11.

Long had been placed on probation for two years beginning on January 23, 2011.[2] *Id.* Barring any violations, Long would have been released from probation on January 22, 2013. Prob. Tr. p. 8.

[13] On February 22, 2013, the State filed an additional petition to revoke Long's probation based on the commission of the offenses in Cause No. 58. Appellant's Prob. App. p. 38. The State alleged that pursuant to statute, Long's probation was "tolled" by the filing of the January 17 petition to revoke his probation and, therefore, Long was still on probation on February 21. *Id.*

[14] The trial court held an evidentiary hearing on both petitions in April 2014. As to the first petition, the trial court found that Long violated probation by testing positive for marijuana on March 26, 2012. Prob. Tr. p. 27. As to the second petition, the court found that Long was still on probation in February 2013 and that he violated probation by committing the offenses in Cause No. 58. *Id.* at 46. Accordingly, the court revoked Long's probation and sentenced him to one year in the DOC, to be served consecutive to his six-year sentence in Cause No. 58.

[15] In this combined appeal, Long appeals his convictions in Cause No. 58 and the revocation of his probation in Cause No. 487.

---

[2] On May 23, 2007, Long was placed on probation as a result of his convictions for Class C felony operating a motor vehicle while privileges are forfeited for life and Class A misdemeanor operating a vehicle while intoxicated. Appellant's Prob. App. p. 36.

# Discussion and Decision

## I. Direct Appeal

### A. Admissibility of Driver Record

[16] Long first contends that the trial court erred in admitting his redacted Indiana Official Driver Record because "its probative value was outweighed by its prejudice." Appellant's Br. p. 9. Specifically, Long argues that the "relevant pages of [his] driving record, as admitted . . . , contained 31 instances of text being marked over with . . . a black marker." *Id.* at 10. But the "entries thought necessary to prove Long's license status are only three in number." *Id.*

[17] Indiana Evidence Rule 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." The danger of unfair prejudice arises from the potential for a jury to substantially overestimate the value of the evidence or its potential to arouse or inflame the passions or sympathies of the jury. *Wages v. State*, 863 N.E.2d 408, 412 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. A trial court's decision regarding whether evidence violates Rule 403 is accorded a great deal of deference on appeal, and we review it only for an abuse of discretion. *Tompkins v. State*, 669 N.E.2d 394, 398 (Ind. 1996).

[18] The probative value of Long's redacted driver record was high. The State had to prove that Long operated a motor vehicle on February 21, 2013, *while* his privileges were forfeited for life under Indiana Code section 9-30-10-16. *See* Ind. Code Ann. § 9-30-10-17 (West 2012) ("A person who operates a motor

vehicle after the person's driving privileges are forfeited for life under section 16 of this chapter . . . commits a Class C felony " ). Long's admission to the officers that he knew his license was suspended did not include the admission that he was suspended *for life*. Accordingly, Long's redacted driver record was necessary and highly probative evidence that proved he was suspended for life at the relevant time under Indiana Code section 9-30-10-16.

[19] The other parts of Long's driver record, including convictions and suspensions, were marked out. Although Long claims that the jury speculated about these thirty-one mark-outs during phase two of trial, the trial court admonished the jury to disregard them. We presume that the jury followed the court's admonishment. *See Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001). Accordingly, the trial court did not abuse its discretion in admitting Long's redacted driver record.[3]

## B. Intoxication

[20] Long does not contest that he was intoxicated. Rather, he contends that the evidence is insufficient to "to show that [he] was intoxicated when he allegedly

---

[3] Long cites *Sams v. State*, 688 N.E.2d 1323 (Ind. Ct. App. 1997), *trans. denied*, but as even Long acknowledges, it is not controlling in this case.

In *Sams*, the defendant offered to stipulate to the fact that his license had been suspended for life because his driver record included many serious offenses. *Id.* at 1324. The State refused to accept the defendant's stipulation, and the trial court allowed the State to establish its case by introducing his *entire* driver record. On appeal, we held that the trial court abused its discretion in admitting the defendant's entire driver record instead of allowing him to admit that his license had been suspended life. *Id.* at 1326.

Here, however, Long did not offer to stipulate that his driving privileges were forfeited for life.

drove the truck." Appellant's Br. p. 12; *see also id.* at 13 ("[T]here was no basis presented by the State from which the jury could reasonably infer that Long became intoxicated before the crash, and not afterward . . . .").

[21] When we review the sufficiency of the evidence to support a criminal conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Buelna v. State*, 20 N.E.3d 137, 141 (Ind. 2014). We neither reweigh the evidence nor assess witness credibility. *Id.* And unless no reasonable fact-finder could conclude the elements of the crime were proven beyond a reasonable doubt, we will affirm the conviction. *Id.* That is, we will find that the evidence is sufficient "if an inference may reasonably be drawn from it to support the verdict." *Id.* (quotation omitted). A conviction for operating while intoxicated may be supported by circumstantial evidence. *Ashba v. State*, 816 N.E.2d 862, 867 (Ind. Ct. App. 2004).

[22] The evidence most favorable to the verdict shows that Long was intoxicated when he drove the truck. Long crossed the centerline in his truck, went off the road, drove into a mailbox, and ran over a big concrete structure, shearing off his wheel. Because the accident occurred without Long braking, swerving, or skidding, this suggests that he was intoxicated when he was driving. Deputy Tompkins determined that the accident had occurred fairly recently, which meant that not much time had elapsed when he encountered Long at the scene of the accident. Moreover, Long admitted to Deputy Tompkins that he had been drinking earlier. In addition, Deputy Long immediately noticed signs of intoxication in Long, including bloodshot and watery eyes, slurred speech,

alcohol on his breath, swaying, and a wet crotch area. When they transported Long to the Sheriff's Department, he fell asleep in the patrol car and Officer True had to shake him to wake him up. Long then failed the field-sobriety tests. Given the extent of Long's intoxication, the crash itself, Long's admission that he was drinking before the crash, and the fact that only three beer cans (one half-full) were found in the truck, we find that the evidence is sufficient to prove that Long was intoxicated when he drove the truck.

# II. Probation Revocation

[23] Long contends that the trial court erred in revoking his probation. Probation is a matter of grace left to the trial court's sound discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if the probationer violates those conditions. *Id.* We review a trial court's probation-violation determination using an abuse-of-discretion standard. *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct. App. 2014). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id.* In determining whether a trial court has abused its discretion, we neither reweigh evidence nor judge witness credibility. *Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009). Instead, we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.* Because a probation-revocation proceeding is civil in nature, the State need

only prove the alleged probation violation by a preponderance of the evidence. *Holmes v. State*, 923 N.E.2d 479, 485 (Ind. Ct. App. 2010).

[24] Long argues that the State's delay in filing the first petition to revoke his probation prejudiced him, denying him due process. Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, they are entitled to these minimum requirements of due process: (1) written notice of the claimed violations of probation; (2) disclosure of the evidence against them; (3) an opportunity to be heard and present evidence; (4) the right to confront and cross-examine witnesses; and (5) a neutral and detached hearing body. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008).

[25] In addition, Indiana Code section 35-38-2-3 governs when a petition to revoke probation must be filed:

> (a) The court may revoke a person's probation if:
>
>> (1) the person has violated a condition of probation during the probationary period; and
>>
>> (2) *the petition to revoke probation is filed during the probationary period or before the earlier of the following*:
>>
>>> (A) One (1) year after the termination of probation.
>>>
>>> (B) Forty-five (45) days after the state receives notice of the violation.
>
> (b) When a petition is filed charging a violation of a condition of probation, the court may:

> (1) order a summons to be issued to the person to appear; or
>
> (2) order a warrant for the person's arrest if there is a risk of the person's fleeing the jurisdiction or causing harm to others.
>
> (c) The issuance of a summons or warrant tolls the period of probation until the final determination of the charge.

(Emphasis added). The forty-five-day deadline is triggered only in those cases where the State received notice of the violation less than forty-five days before the defendant's probationary term expired or after the term expired. *Clark v. State*, 958 N.E.2d 488, 492 (Ind. Ct. App. 2011).

[26] Long claims that he gave a urine sample on March 26, 2012, which came back positive for marijuana on April 2, 2012. However, the State did not file a petition to revoke Long's probation until January 17, 2013, which was filed during his probationary period but only a couple of days before it was set to expire on January 22, 2013. Because of the State's ten-month delay in filing the petition, which "can impede a defendant's preparation of his or her defense," Long asks for a rule that "any violation should be acted upon within 45 days, regardless of when during a term of probation it is discovered." Appellant's Br. p. 6, 7. We first note that Long has made no showing that his defense has been impeded. Instead, the evidence shows that Long knew that he tested positive for marijuana in May 2012 and was told at that time to complete treatment. Second, Section 35-28-2-3 is clear that the petition to revoke probation can be filed any time during the probationary period, and here the first petition was

filed when Long was still on probation. We therefore decline to adopt a different rule and find no due-process violation.

[27] In addition, because the State timely filed the first petition to revoke Long's probation based on the positive test result, his probation was tolled pursuant to statute. *See* Ind. Code § 35-38-2-3(c) ("The issuance of a summons or warrant tolls the period of probation until the final determination of the charge."). Accordingly, Long was still on probation on February 21, 2013, when he committed the offenses in Cause No. 58 because the first petition was still pending. Therefore, any challenge Long makes on this basis fails.

[28] Affirmed.

Baker, J., and Riley, J., concur.